UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LEKO JONES, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 2:03-CR-73 |
| | ) | NO. 2:09-CV-09 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

On January 20, 2009, Leko Jones ("petitioner" or "Jones") filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, [Doc. 551], along with a supporting memorandum, [Doc. 552], in which he raised claims which he numbered 1 through 9. On January 27, 2012, the Court denied the motion to vacate as to all claims except for claim 7 and granted an evidentiary hearing and appointed counsel as to that claim, [Doc. 642]. The evidentiary hearing was conducted on March 16, 2012. The petitioner and his former attorney, Angela Morelock, were the only witnesses. For the reasons which follow, the motion will now be DENIED as to claim 7.

Jones states claim 7 as follows in his memorandum: "Movant Jones asserts that he was denied his constitutional right to the effective assistance by counsel's failure to investigate and to advise Jones as to what plea to enter." He elaborates on the claim somewhat in his affidavit filed by him in support of his motion. In that affidavit, [Doc. 553-1], petitioner asserts:

. . . .

> [4]    That attorney MORELOCK never advised me of any plea offer of the government, but only told me that in order to plead that I had to cooperate;

> . . . .
>
> [6]   That had I been constitutionally advised as to any plea offer of the government, or been made aware that I could have plead without cooperating, I would have plead guilty.

[Doc. 553-1]. Jones also suggest that, had he been advised he could do so, he would have pled to the indictment so he could have "received a 3 level reduction for having accepted responsibility."

The testimony from the evidentiary hearing is relatively straightforward. Jones testified that Ms. Morelock, a CJA panel attorney, was appointed to represent him after his arrest in this case. During the course of her representation, Ms. Morelock had attorney client meetings with Jones "quite a few times." Although Jones has an extensive criminal history, this was his first time to be charged in federal court. Ms. Morelock advised him he could be facing life imprisonment if convicted. She reviewed discovery with him, advised him of the government's cooperating witnesses and advised him to cooperate with the government and testify against others. He believed he would "absolutely" be convicted at trial but was not willing to cooperate with the government or to testify against anyone else.

According to Jones, Ms. Morelock never made him aware of any plea agreement offered by the government except that, during trial, she advised him of a government offer that he plead guilty, cooperate with the government against Mario Graves, his cousin, and receive a 20 year sentence. Plea agreements were also offered to the other co-defendants who had gone to trial at the same time. He considered the offer but rejected it because he was unwilling to cooperate and testify. He first learned of a written plea agreement (Exs. 1, 2, 3) when he received a copy along with the appellate brief Ms. Morelock had filed on his behalf in the Sixth Circuit Court of Appeals. Ms. Morelock never discussed with him the possibility of pleading "straight up" to the indictment or that he might

2

benefit from such a strategy. Had he known of that possibility, Jones would have pleaded guilty to all the substantive counts and the conspiracy count, although he would not have answered any questions from the Court during a change of plea hearing about what anyone else in the case did.

Ms. Morelock testified that she was appointed to represent Jones and that she has a clear recollection of the representation, although the files related to the case are stored in six bankers' boxes. Ms. Morelock did a thorough investigation of the case in the months before trial, retained a private investigator to assist her in preparation for the trial, discussed the government's evidence against Jones with Jones, explained to him the differences between a prosecution in federal court and one in state court, including the mandatory (at that time) nature of the sentencing guidelines, the mandatory minimum sentences to which he might be subject, and her thought early on that he might be a career offender under the Federal Sentencing Guidelines. During the course of the representation, Ms. Morelock investigated and interviewed numerous witnesses, including several in Burlington, North Carolina, of which she was informed by Jones. All of the witnesses interviewed would, in one way or another, have actually harmed Jones' defense. Ms. Morelock advised Jones that she thought he would be convicted at trial and her strategy came down to doing whatever she could to minimize the damage at trial.

Early on in her representation of Jones, Ms. Morelock, while at the Washington County Detention Center to meet with Jones, had a chance meeting with FBI Agent Drolshaugen who expressed to her at the time a strong interest in obtaining Jones' cooperation and learning from him the identity of his North Carolina drug supplier. Drolshaugen told Ms. Morelock he could offer a plea deal which would result in a ten year sentence to Jones if he would cooperate and identify his supplier. Drolshaugen told Ms. Morelock he had the blessing of the Assistant United States

3

Attorney handling the case in making the offer.

The offer was conveyed to Jones who immediately refused to " rat out" his friends. Ms. Morelock advised him he should consider the offer. Throughout the course of Ms. Morelock's representation of Jones, the government continued to offer a plea agreement but each time it was conditioned upon Jones agreeing to cooperate, provide information against his supplier and testifying at trial against his co-defendants. Jones maintained throughout that he was unwilling to accept those terms and would rather be convicted and do his time than to "rat out" his co-defendants. Ms. Morelock specifically reviewed with Jones the proposed plea agreement and proposed agreed factual basis mailed to her by the Assistant United States Attorney in May, 2004 (Exs. 1, 2, 3).

Although the government never withdrew the offer, and reiterated it during the trial, the government always made it clear that it would not accept a plea agreement which did not include a cooperation agreement and Jones was likewise adamant that he would not accept a plea agreement with such a provision, despite Ms. Morelock's continued advise that his chances of acquittal were slim and that he should consider the offer in an effort to reduce his potential sentence exposure. When she discussed the offer with Jones during trial, she was "practically begging him to take the deal."

During her representation of Jones, Ms. Morelock also discussed with Jones the possibility of pleading straight up to the indictment. Jones was willing to plead guilty without the benefit of a plea agreement as to the substantive counts contained in the indictment but was unwilling to plead guilty to the conspiracy count. Ms. Morelock's file contains a memo from her investigator confirming that he also raised the issue with Jones about pleading to all counts of the indictment as was told by Jones that he was unwilling to plead guilty to the conspiracy count. While Ms.

Morelock acknowledged that Jones could have obtained a potential three level reduction in his guidelines range by pleading guilty without benefit of a plea agreement, she also indicated that, based upon the evidence the government had against Jones, it was clearly possible that he could ultimately be held accountable for a quantity of drugs approximating that contained in the proposed agreed factual basis submitted to her by the government, i.e. 42.5 ounces. Had he ultimately been held responsible for that quantity, Jones' offense level would have been at least two levels higher under the guidelines, largely offsetting any benefit from acceptance of responsibility.

First of all, to the extent the Court must make credibility determinations in the case between the testimony of Ms. Morelock and that of Jones, the Court fully credits the testimony of Ms. Morelock. She is credible; Jones is not. Ms. Morelock is a competent and experienced attorney who has extensive experience in the defense of criminal charges in this Court. The Court fully credits her testimony that she thoroughly investigated the case, that she reviewed all plea agreement offers with Jones, that she appropriately advised him as to his options and that Jones was unwilling to accept any plea agreement from the government which included a cooperation provision or a requirement that he testify against others and that Jones was unwilling to plead "straight up" to the conspiracy charge contained in the indictment. Jones has not carried his burden of proving that the government's offers were never discussed with him, that he was unaware of his option to plead "straight up" to the indictment or that he was unaware of the potential benefit to him in doing so. Simply put, Jones has not proven any ineffective assistance of counsel on the part of Ms. Morelock.

Furthermore, the Court affirmatively finds that Ms. Morelock's performance was reasonable under the circumstances of this case and was not deficient in any way. In addition, even if Jones could establish some deficient performance on the part of counsel, he can prove no prejudice to him.

5

It is clearly established in this record that Jones would not have entered a guilty plea pursuant to any plea agreement which required him to cooperate and to testify against co-conspirators. It is equally clear that the government never offered any plea agreement without those very terms. The proof in the case also clearly establishes that Jones would not have pled guilty to the conspiracy charge contained in the indictment, even though he was fully aware of his option to do so.

In short, Jones can show neither deficient performance on the part of counsel nor any prejudice to him with respect to Ms. Morelock's representation of him during plea negotiations in the case nor can he show deficient performance or prejudice related to counsel's advice to him about his option to plead guilty to all counts of the indictment without benefit of a plea agreement. The petitioner's motion as to claim 7 will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurors would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was

6

debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

As noted above, an attorney was appointed by the Court to represent the petitioner at the evidentiary hearing. Given the dismissal of the petition and denial of a certificate of appealability, the appointment of Guy W. Blackwell, Esquire as the attorney for the petitioner is TERMINATED.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE